<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

In re:

G-I HOLDINGS, INC. f/k/a GAF
CORPORATION, et al.

      Debtor.

**<u>OPINION</u>**
Civil No. 05-4630
(WGB)

Bankr. Case Nos.
01-30135 (RG)
01-38790 (RG)
(Jointly Administered)

**APPEARANCES:**

SAIBER SCHLESINGER SATZ & GOLDSTEIN, LLC
By:  David R. Gross, Esq.
     Nancy A. Washington, Esq.
     Whitney R. Chelnik, Esq.
One Gateway Center, 13th Floor
Newark, New Jersey 07102

KEATING, MUETHING & KLEKAMP, P.L.L.
By:  Kevin E. Irwin, Esq.
     Michael L. Scheier, Esq.
     Douglas Hensley, Esq.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

     Counsel for the Legal Representative of Present and Future
     Holders of Asbestos-Related Demands

LOWENSTEIN SANDLER, PC
By:  John K. Sherwood, Esq.
     Rose E. Ramsay, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068

CAPLIN & DRYSDALE, CHARTERED
By:  Elihu Inselbuch, Esq.
299 Park Avenue, 27th Floor

New York, New York 10022

CAPLIN & DRYSDALE, CHARTERED
By:  Trevor W. Swett, Esq.
     Peter Van N. Lockwood, Esq.
One Thomas Circle, N.W.
Washington, DC 20005

     Counsel for the Official Committee of Asbestos Claimants

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
By:  Dennis J. O'Grady, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962

WEIL, GOTSHAL & MANGES LLP
By:  Martin J. Bienenstock, Esq.
     Kathryn L. Turner, Esq.
     Ralph I. Miller, Esq.
     Debra L. Goldstein, Esq.
     John B. Kinchen, Esq.
767 Fifth Avenue
New York, New York 10153

     Counsel for Plaintiffs and Counter-Defendants

**BASSLER, SENIOR DISTRICT JUDGE:**

     Debtor, G-I Holdings Inc. ("G-I"), moved to appeal the
Bankruptcy Court's July 14, 2005 order ("July 14 Order") denying
G-I's application for an order pursuant to 11 U.S.C. § 502(c)
establishing a method to liquidate individual asbestos claims.
The Legal Representative of Present and Future Holders of
Asbestos-Related Demands ("Legal Representative"), being joined
by the Official Committee of Asbestos Claimants ("Committee"),
now moves to dismiss G-I's appeal on the basis that the
Bankruptcy Court's July 14 Order was not final.  The Legal

2

Representative and Committee further submit that G-I's appeal
should not be converted into a notice of motion for leave to
appeal an interlocutory order.

## I.   BACKGROUND

### A. General History

G-I, the successor to GAF Corporation ("GAF"), filed for
chapter 11 bankruptcy on January 5, 2001 and continues to operate
as a debtor in possession.  GAF was a building materials company
that produced asbestos products.  An affiliate of G-I, ACI, also
commenced a chapter 11 case, and the two cases are being
administered jointly.

GAF has been named in 500,000 asbestos claims and both GAF
and G-I have paid over $750 million to asbestos plaintiffs over
the past seven years.  G-I remains liable for approximately
150,000 asbestos lawsuits that have been filed and for unknown
numbers of asbestos claims that will be filed in the future.  In
fact, G-I claims that it was forced to file for bankruptcy due to
an increase in both the number of asbestos claims filed against
it and the settlement amounts demanded by asbestos claimants.

Building Materials Corporation of America ("BMCA"), a
leading manufacturer of roofing and building products, is an
indirect subsidiary of G-I and is also the primary operating
subsidiary and principal asset of G-I.  Established in 1994, BMCA
received substantially all assets of GAF's products business and

3

expressly assumed $204 million of asbestos liability with G-I indemnifying BMCA against additional asbestos liability.  In re G-I Holdings, Inc., 323 B.R. 583, 588 (Bankr D.N.J. 2005) (citing In re G-I Holdings, Inc., 313 B.R. 612, 621 (Bankr. D.N.J. 2004)).  No asbestos claims were filed against BMCA until G-I was in danger of filing for bankruptcy.  Claimants then began naming BMCA as a defendant according to theories of successor liability and alter ego liability.

Shortly after G-I filed for chapter 11 bankruptcy protection, the United States trustee appointed the Committee to represent present asbestos claimants or individuals exposed to G-I's asbestos products pre-petition who had manifested an asbestos related injury prior to plan confirmation on January 18, 2001. On October 10, 2001, C. Judson Hamlin was appointed by the Bankruptcy Court as the Legal Representative to protect the interests of those individuals currently unknown to the parties that have not yet manifested an asbestos-related injury but may hold future claims.

B.  *May 13 Order Denying Motions to Withdraw Reference*

On May 23, 2002 the Committee filed a motion in this Court for partial withdrawal of reference as to G-I's application for estimation of claims under 11 U.S.C. § 502(c).  Subsequently, G-I

filed its Estimation Motion on June 19, 2002.[1]  The Legal
Representative filed its own motion to withdraw reference of G-
I's application for an estimation on August 9, 2002.  On May 13,
2003, the Court denied the motions to withdraw the reference on
the basis that "judicial economy is . . . better served by having
the Bankruptcy Court retain jurisdiction of the estimation
process."  Official Committee of Asbestos Claimants v. G-I
Holdings, Inc. (In re G-I Holdings Inc.), 295 B.R. 211, 218-220.
The Court reasoned that given the Bankruptcy Court's
understanding of the facts and issues in the case and the
knowledge of the chapter 11 reorganization process the Bankruptcy
Court should "attempt the estimation proceeding in the first
instance."  Id. (emphasis added).

   C.  The Bankruptcy Court's July 14 Decision

   After G-I filed its Estimation Motion on June 19, 2002, the
Committee and the Legal Representative filed their objections to
the motion on August 30, 2002 and September 2002, respectively.
The Committee also filed a competing motion on May 23, 2002.
While G-I's motion proposed a novel method of estimating

---

[1]The parties strongly differ as to the characterization of
the motion filed by G-I Holdings.  While G-I Holdings submits
that its motion seeks claims estimation pursuant to § 502(c)of
the Bankruptcy Code, the Committee and Legal Representative
assert that the motion is an improper attempt to liquidate,
rather than estimate, claims under the Code.  Nevertheless, for
purposes of clarity the Court will refer to the present motion as
the Estimation Motion.

individual personal injury claims, the Committee sought an order
from the Bankruptcy Court approving a process that would estimate
G-I's asbestos liability in the aggregate.  G-I proposed a
detailed and intricate scheme whereby all asbestos personal
injury claims asserted against its estate would be liquidated
through the application of a medical matrix, which G-I developed.
323 B.R. at 590.  In addition, a Claims Liquidation Committee
("CLC") would be charged with the responsibility of administering
the claims procedures established by G-I.  The Committee objected
on the basis that the medical matrix and claims liquidation
procedures actually amount to an improper liquidation of all
personal injury claims for the purpose of determining actual
distributions to persons whose claims are allowed.  As a result,
the Committee and Legal Representative submit that G-I's
"liquidation-by-estimation scheme" would violate asbestos
claimants' rights because it would determine final values for
individual claims, for purposes of distribution under the
reorganization plan, without affording claimants any right to a
jury trial.  323 B.R at 600.  G-I concedes that the asbestos
claimants would not receive a jury trial under its plan.

    The Bankruptcy Court agreed with the Committee and the Legal
Representative, and ruled that the claims held by the asbestos
claimants are "legal in nature," and therefore, carry with it the
Seventh Amendment's guarantee of a right to a jury trial.  323

B.R. at 606 (citing <u>Granfinanciera v. Nordberg</u>, 492 U.S. 33, 55 (1989)).  Additionally, the Bankruptcy Court held that G-I's motion further violated 28 U.S.C. § 1411, which provided that neither title 11 nor chapter 87 of title 28 should affect a jury trial right.  The Bankruptcy Court also ruled that the appointment of the CLC to determine individual claims violated clear statutory mandates.  323 B.R. at 607, 614-16 (citing 28 U.S.C. § 157 and Fed.R.Bankr. P. 9031)).  The Bankruptcy Court instead granted the Committee's motion to estimate G-I's asbestos liability in the aggregate, but rejected its request to set up a trust under § 524(g).  More importantly to the current motion, the Bankruptcy Court <u>did</u> <u>not</u> estimate the actual value of any claims against G-I or allow or disallow any asbestos claims.  In fact, the Court left open certain aspects of the proper estimation procedure, including the methodology to estimate asbestos liability in the aggregate.

G-I filed a notice of appeal pursuant to Bankruptcy Rule 8002(a) on July 25, 2005 purporting to appeal to this Court under 28 U.S.C. § 158(a) from the portion of the July 14 Order denying G-I's Estimation Motion.  In the Bankruptcy Court, G-I argued that the lack of a right to jury trial does not affect the viability of the medical matrix and the claims liquidation procedures because asbestos-related personal injury claimants have no constitutional or statutory right to a jury trial in the

context of a bankruptcy proceeding.  323 B.R. at 601.  The Legal
Representative, joined by the Committee, move to dismiss the
appeal on the basis that the Court does not have subject matter
jurisdiction under 28 U.S.C. § 158 because the Bankruptcy Court
decision is not final and G-I has not satisfied the requirements
necessary for leave to appeal an interlocutory order.

## II.  JURISDICTION

District courts may hear both final and interlocutory orders
from the bankruptcy courts under section 158(a) of the Bankruptcy
Code.  Brown v. Pennsylvania State Employees Credit Union, 803
F.2d 120 (3d Cir. 1986).  Section 158(a) provides in part:

> The district courts of the United States shall have
> jurisdiction to hear appeals from final judgments,
> orders, and decrees, and, with leave of the court from
> interlocutory orders and decrees, of bankruptcy judges
> entered in cases and proceedings referred to the
> bankruptcy judges under section 157 of this title.

Therefore, the Court must first determine whether the Bankruptcy
Court's July 14 Order was final, and if not, the Court must
decide whether it should grant G-I leave to appeal the Bankruptcy
Court's interlocutory order.

The Court finds that the Bankruptcy Court's July 14 Order is
not final and refuses to grant leave for G-I to appeal the
Bankruptcy Court's interlocutory order.  Therefore, the Court
does not have subject matter jurisdiction to hear G-I's appeal.
The Legal Representative's and Committee's motion to dismiss the
appeal is granted.

8

### III.  ANALYSIS

*A.  Finality of the Bankruptcy Court's July 14 Order*

The Court of Appeals for the Third Circuit has consistently considered finality in a more pragmatic and less technical way in bankruptcy cases than in other cases.  In re Amatex Corp., 755 F.2d 1034, 1039 (3d Cir. 1985).  Due to the unique nature of bankruptcy cases, the Third Circuit has often permitted review of orders, which would have been considered interlocutory in other situations.  See e.g., Brown v. Pennsylvania State Employees Credit Union, 803 F.2d 120, 122 (3d Cir. 1986).  The Court of Appeals for the Third Circuit recognized that by permitting parties to appeal discrete issues in bankruptcy proceedings, the Court may save resources that would be wasted by requiring the completion of the proceedings before allowing an appeal.  The Third Circuit has noted, however, that review in the bankruptcy context is not without limitations and has expressed a "general reluctance to adopt an expansive interpretation of finality." Id. (dismissing appeal of district court ruling which was not final where the district court's order did not affect distribution of the debtor's assets or relationship amongst the creditors).

The Third Circuit Court of Appeals has directed district courts to consider four factors in determining whether an order of the bankruptcy court is final.  Dal-Tile Intl., Inc. v. Color Tile, Inc., 203 B.R. 554, 556 (D. Del. 1996).  These factors are

9

(1) the impact on the assets of the estate; (2) the preclusive effect of a decision on the merits; (3) the need for additional fact-finding on remand; and (4) whether the interests of judicial economy will be furthered.  <u>Id.</u>  Of these four factors, the impact on the assets of the bankrupt estate is considered most important.  <u>Id.</u>

Even before analyzing these four factors, the Court finds of significant import its May 13 ruling denying the motions to withdraw reference on the basis that judicial economy is better served by allowing the Bankruptcy Court to conduct the estimation proceeding in the first instance.  The Court notes its initial reluctance to hear an appeal at this stage of the proceedings fearing that it will be called to referee every determination of the Bankruptcy Court.  Had the Court wished to take on this role, it could have withdrawn the reference from the beginning of these proceedings.

***Impact on Bankrupt Estate***

The Bankruptcy Court's July 14 Order does not impact the assets of the bankrupt estate, as G-I contends.  The Bankruptcy Court merely refused to adopt G-I's proposed method for estimating asbestos claims.  G-I suggests that by denying its method of liquidating asbestos claims on the basis that this

method violates asbestos claimants right to a jury trial,[2] the Bankruptcy Court effectively ruled that the over 150,000 asbestos claimants are absolutely entitled to a trial by jury, which would extend "for years at hundreds of millions of dollars of expense." G-I Memorandum of Law ("G-I Mem.") at 15.  Based on this far-reaching conclusion G-I claims that the impact of the Bankruptcy Court's ruling on a chapter 11 plan for G-I's bankrupt estate would be "magnitudinous."

G-I's conclusion overstates the Bankruptcy Court's ruling. The Bankruptcy Court did not hold that the over 150,000 claims currently filed against G-I would be tried by a jury.  The Bankruptcy Court noted that, "the parties agree that neither a debtor nor its personal injury claimants have a right to jury trial in an estimation proceeding conducted under § 502(c) of the Bankruptcy Code."  323 B.R. at 600.  Since the Bankruptcy Court, in actuality, ruled that an estimation of G-I's asbestos liability should be conducted in the aggregate, the right to a jury trial was not triggered and no effect on the bankrupt estate has occurred.  If, however, the Bankruptcy Court had established

---

[2]Although G-I focuses on the Bankruptcy Court's right to jury trial determination, the Court considered other factors when denying G-I's motion proposing a method to liquidate asbestos claims.  The Court notes that the Bankruptcy Court also denied the motion on the basis that several procedural deficiencies existed with G-I's proposal.  323 B.R. at 600.  The Bankruptcy Court further ruled that the appointment of the CLC to determine individual claims violated clear statutory mandates.  Id. at 607, 614-16.

the methodology to be used to estimate asbestos claims and
estimated the value of G-I's asbestos liability, then its ruling
would have affected the bankrupt estate.  See e.g., In re
Armstrong, 292 B.R. 678, 685 (10th Cir. 2003) (deeming final and
appealable bankruptcy court order estimating value of creditor's
claim for purposes of voting on trustee's plan of
reorganization).[3]

The Bankruptcy Court itself noted that deciding to conduct
the estimation proceeding in the aggregate still does not resolve
every difficult issue.  In re GI Holdings, Inc., 323 B.R. at 624.
In addition, the Court stated that "once the precise estimation
procedure and methodology are determined, and prior to the
estimation hearing" two additional issues may need to be
resolved: "1) whether a statutory cap can be placed on damages
under § 502(c) and 2) whether the estimation of claims should be
based upon G-I Holdings overall claims-resolution or if it should
be based upon the average value of federal tort claims asserted
against GAF settled or tried from 1997 through 1999."  Id. at
n.42.

Dal-Tile Intl., Inc. is instructive.  203 B.R. at 554.  In
that case, suppliers sought the reclamation of goods allegedly

---

[3]G-I cites In re Armstrong and several other cases with
similar holdings.  As discussed above, these cases are inapposite
to this case because no estimation of the value of the asbestos
claims has been made.  G-I Mem. at 12-13.

12

delivered to the debtor pre-petition.  The Bankruptcy Court
granted the debtor's motion to deny reclamation.  One supplier
appealed the decision claiming that the Bankruptcy Court erred
when it summarily denied the supplier the right to physically
reclaim its goods without granting it a corresponding
administrative expense claim or a replacement loan.  <u>Id.</u> at 556.
The District Court for the District of Delaware held that the
Bankruptcy Court's order was not final because the order merely
established a procedure for determining the validity and value of
a supplier's reclamation claim and did not actually adjudicate
the merits of any reclamation claim.  <u>Id.</u>  Similarly, the
Bankruptcy Court here has yet to even establish the methodology
for estimating the value of the asbestos claims, let alone,
adjudicate the merits of any asbestos claims.[4]  By refusing to

---

[4]G-I correctly notes that the district court in <u>Dal Tal
Intl. Inc.</u> ruled that the Bankruptcy Court's order was not final
because it was procedural in nature since reversal of the
Bankruptcy Court's order would not preclude the Bankruptcy Court
from denying the creditor's physical reclamation of its supplies,
but could only preclude the Court from denying this right without
granting a contemporaneous administrative claim or lien.  G-I is
incorrect, however, in its contention that this fact
distinguishes that case from the present one because at issue
here is the right to a jury trial.  G-I Mem. at 14-15.  First, as
stated earlier, the right to a jury trial was not the only basis
for the Bankruptcy Court's decision.  <u>See</u> <u>supra</u> at 10, n.2.  The
Bankruptcy Court ruled that procedural deficiencies in G-I's
proposal further warranted its determination.  323 B.R. at 616.
Furthermore, like the <u>Dal Tile Intl., Inc.</u> case, if this Court
reversed the Bankruptcy Court's decision, the method used to
estimate claims is within the Bankruptcy Court's sound
discretion, and upon remand, the Bankruptcy Court still could
decide that even though G-I's proposal does not violate the

approve G-I's proposed estimation method and granting the
Committee's motion to estimate G-I's asbestos liability in the
aggregate, the Court has taken only its first step in the
estimation process, causing no effect on the bankrupt estate.

***Preclusive Effect of the Decision***

An appeal of the Bankruptcy Court's July 14 Order will not
have a preclusive effect on further litigation regarding the
estimation proceeding.  As stated above, the Bankruptcy Court's
July 14 Order did not establish an estimation methodology, did
not estimate the value of any claims and did not adjudicate the
merits of any asbestos claims.   Therefore, an appeal of the
Bankruptcy Court's order determining the viability of a
particular estimation method, has no preclusive effect on the
actual merits of the estimation proceeding.  <u>Dal Tile Intl. Inc.</u>,
203 B.R. at 557 (holding that "[b]ecause the Bankruptcy Court did
not adjudicate the merits of Dal-Tile's reclamation claim, the
Reclamation Order does not preclusively resolve the validity,
priority, or value of this claim"); <u>Cf.</u> <u>In re Blastein</u>, 192 F.3d
88 (finding that there was no question that an appellate court
decision would have a preclusive effect where the appeal
concerned whether debtor fraudulently transferred income to his
wife and an appeal could result in an increase of the bankrupt

---

constitutional and statutory rights of asbestos claimants to a
jury trial, G-I's proposal is not the best way to estimate the
claims.

estate).  An appeal now would only allow G-I's proposed estimation method to be reconsidered by the Bankruptcy Court and is not preclusive on any further litigation in the matter.

***Need for Further Fact-Finding***

Further fact-finding would still be necessary if the Court made a decision on appeal.  In <u>Southeastern Sprinkler Co., v. Meyertech Corp.</u>, 831 F.2d 410, 414 (3d Cir. 1987), the Third Circuit held that the fact-finding element for determining finality is satisfied where the Third Circuit's decision would "preclude the necessity of further activity by the fact-finding tribunal [and] will obliterate the need for more litigation."  In contrast, a decision by this Court would not preclude the need for the Bankruptcy Court to conduct further fact-finding to determine the appropriate methodology to estimate the value of G-I's asbestos liability.

Even if the Court ruled that G-I's proposal did not violate asbestos claimants constitutional and statutory rights to a trial by jury or that the appointment of the CLC did not violate clear statutory mandates, the Bankruptcy Court would still have to determine the proper method of estimation, estimate G-I's asbestos liability and adjudicate the validity of claims.  This process would require further fact-finding on remand.  In addition, the Bankruptcy Court expressly left for future resolution the "mechanics" of the estimation it will conduct in

this case, 323 B.R. at 626, inviting the opportunity for the parties to submit briefs setting forth the details of the methodology and evidence they believe the Bankruptcy Court should use when it estimates G-I's aggregate asbestos liability. Accordingly, an appeal would not eliminate additional work for the Bankruptcy Court.

**_Interests of Judicial Economy_**

The interests of judicial economy would not be furthered, if this Court has to take on an appeal every time the Bankruptcy Court makes any determination regarding the estimation proceeding.  Doing so would clog up the docket of the Court and would undermine the Court's ruling denying the Committee's and Legal Representative's motions to withdraw the reference on all estimation claims.   The Court specifically stated in making that ruling that the interest of judicial economy warranted allowing the Bankruptcy Court to determine the estimation proceedings in the first instance.  295 B.R. 211, 220.  By first instance the Court was not referring to the very first decision of the Bankruptcy Court, but was intending to allow the Bankruptcy Court to make the initial determination regarding the estimation proceedings.  At this stage of the case, the Bankruptcy Court has only taken a preliminary step in making this determination.

G-I argues that the Court should hear G-I's appeal because judicial economy is not served by making G-I begin the arduous

task of litigating its over 150,000 pending claims.  The Court already has discussed the unreasonableness of this contention.  See supra at 10-11.  G-I also contends that if the jury trial decision is wrong, but is not reversed until after the confirmation of a plan, the entire plan formulation will have to be repeated.  The Court recognizes this possibility, but is not as concerned with this potential outcome at this stage of the process as it is with the possibility of numerous piecemeal appeals inundating this Court's docket.  The Bankruptcy Court is not close to the confirmation of a plan at this stage of the estimation proceedings and the Court does not believe that reviewing the Bankruptcy Court's July 14 Order would advance the interest of judicial economy.

Because the Bankruptcy Court's July 14 Order fails to satisfy any of the four factors considered in a determination of finality, the Court finds that the July 14 Order is not final.  Consequently, the Court must next determine whether it should grant leave to appeal the Bankruptcy Court's interlocutory order.

*B. Leave to Appeal an Interlocutory Order*

Under 28 U.S.C. § 158(a), a district court has jurisdiction to hear appeals "with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judge under section 157 of this title."  Although the statute does not set forth a standard

17

for determining when the district court should grant leave to
hear an interlocutory appeal, courts construing the provision
have adopted the approach set forth in 28 U.S.C. § 1292(b), which
provides the standard that district courts use to determine when
interlocutory appeals should be certified to the court of
appeals.  Based on that standard, appeals of interlocutory orders
are permitted when there are substantial grounds for a difference
of opinion as to a controlling question of law and where an
immediate appeal from the order may materially advance the
ultimate termination of the litigation.  Bertoli v. D'Avella, 58
B.R. 992, 995 (D.N.J. 1986).

The absence of any one of these elements renders an
interlocutory order inappropriate for § 1292(b).  Ahrenholz v.
Bd. of Trs. Of the Univ. Of Ill., 219 F.3d 674, 676 (7th Cir.
2000).  Additionally, a court will entertain an appeal under
section 1292(b) only when an appellant has shown that exceptional
circumstances justify departure from the basic policy of
postponing review until after the entry of final judgment.  Dal
Tile Intl., Inc., 203 B.R. at 557.  Ultimately, the party seeking
certification has the burden of proving that certification is
warranted.  Orson v. Miramax Film Corp., 867 F.Supp. 319 (E.D.
Pa. 1994) (citing Piazza v. Major League Baseball, 836 F.Supp.
269, 271 (E.D. Pa. 1993)).  G-I does not meet that burden.

First, G-I has failed to establish that substantial grounds

18

for a difference of opinion exists by arguing merely that no case law exists regarding the interplay between 28 U.S.C. § 1411 and 28 U.S.C. § 157(b)(2)(B).  The Court is persuaded, however, by the cases from courts in the Third Circuit cited by the Legal Representative holding that the fact that an issue is one of first impression alone does not create a substantial ground for a difference of opinion.  Legal Representative Reply Memorandum ("Leg. Rep. Reply Mem.") at 13, n.12 (citing In re Sharps Run Assoc., 157 B.R. 766, 779 n.6 (D.N.J. 1993)("The mere fact that the appeal would present a question of first impression is not, of itself, sufficient to show that the question is one on which there is a substantial ground for difference of opinion.")).  Since G-I presents no argument, other than the absence of case law, to support its position, the substantial grounds for a difference of opinion element has not been met.

Second, the Court is not convinced that a controlling question of law is involved.  The Third Circuit has held that a controlling question of law is, at the very least, every order which would be reversible error on final appeal.  Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir. 1974), cert. denied, 419 U.S. 885 (1974).  The Katz Court further stated that any question of law that is "serious to the conduct of the litigation, either practically or legally" has been found to be controlling.  Id.

19

In general, the bankruptcy court has discretion to determine the appropriate method of claim estimation in light of the particular circumstances of the bankruptcy case before it. <u>In re Thomson McKinnon Sec., Inc.</u>, 143 B.R. 612, 619 (Bankr. S.D.N.Y. 1992) ("[I]n estimating [a] claim, the bankruptcy court should use whatever method is best suited for the circumstances) (citation omitted). Even if the Court were to determine that G-I's proposal is viable and does not suffer the deficiencies found by the Bankruptcy Court, the Bankruptcy Court nevertheless has the discretion to determine what estimation method is best suited for the case. Therefore, the Bankruptcy Court's denial of G-I's novel proposal likely would not constitute reversible error on final appeal. The Court also does not find that the Bankruptcy Court's July 14 Order denying G-I's proposal is serious to the conduct of the litigation. The Bankruptcy Court has determined only what process shall be used to estimate G-I's asbestos liability but must still develop an estimation methodology and take further steps to conclude the estimation proceedings. Therefore, the question of whether the Bankruptcy Court erred by denying G-I's method to liquidate asbestos claims is not controlling.

Third, as discussed above, this appeal would not materially advance the litigation of this case, but would only serve to delay the Bankruptcy Court's progress finalizing the estimation

proceeding.  <u>See</u> <u>supra</u> at 16.  Judicial economy is not served by this Court serving as the referee to every decision made by the Bankruptcy Court.

Lastly, G-I has not shown any exceptional circumstances justifying the departure from the basic policy of postponing review until after the entry of final judgment.  Consequently, the Court will not grant leave to appeal the Bankruptcy Court's interlocutory order dated July 14, 2005 and grants the Legal Representative's and Committee's motion to dismiss the appeal.

## IV.  CONCLUSION

For the reasons stated in this Opinion, this Court grants the motion to dismiss the appeal.


An appropriate Order accompanies this Opinion.


                    /s/ William G. Bassler
                    WILLIAM G. BASSLER, U.S.S.D.J.


Dated: December 7, 2005